CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED

7/2/2026

LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| HILARY HARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:26-cv-00315 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MONTGOMERY COUNTY SCHOOL | ) | By:  Hon. Thomas T. Cullen |
| BOARD, | ) |       United States District Judge |
| | ) | |
| Defendant. | ) | |

On April 13, 2026, Plaintiff Hilary Harrison filed suit against her employer, Defendant Montgomery County, Virginia School Board ("the Board"). (*See* Compl. [ECF No. 1].) Harrison asserts discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000-e2 & 2000e-3, arising out of her 2024 termination as a middle-school basketball coach. (*Id.*) This matter is now before the court on the Board's partial motion to dismiss Harrison's retaliation claim. (Def.'s Mot. Dismiss [ECF No. 6].) Because Harrison has plausibly alleged that she suffered an adverse employment action, the Board's motion will be denied.

## I.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

In this action, Harrison brings both discrimination and retaliation claims against the Board. (*See* Compl. ¶¶ 31–57.) Because the Board only moves to dismiss Harrison's claim of retaliation, the court recites the facts that are relevant to that claim.

Harrison is a current teacher and the former girls' basketball coach at Blacksburg Middle School. (Compl. ¶¶ 8, 9.) She asserts that, throughout her 15-year tenure as a teacher

and coach in Virginia schools, she received consistently positive performance evaluations from her supervisors and administrators.[1] (*Id.*) But in December 2024, following a parent complaint regarding her coaching, Harrison was removed as the head coach of the basketball team, and a formal letter of reprimand was placed in her employee file. (*Id.* ¶¶ 10–12.) Harrison contends that her termination was discriminatory, which she supports with detailed allegations that underlie Count I. (*Id.* ¶¶ 12–19.)

On January 15, 2025, shortly after she was removed from the coaching position, Harrison met with the school principal, Robert Johnson, for a mid-year teaching evaluation. (*Id.* ¶ 20.) Harrison avers that, during the meeting, Johnson "raised no criticism of [her] classroom performance." (*Id.* ¶ 20.) At the conclusion of the meeting, Harrison informed Johnson "that she intended to submit a written response to the letter of reprimand and to pursue a formal grievance . . . challenging her termination as a coach" based on disparate treatment between male and female athletic coaches. (*Id.* ¶ 21.)

The next day, Harrison alleges that she was "summoned" to Johnson's office "under false pretenses" because, when she arrived, Johnson led her "to a secluded back office." (*Id.* ¶ 22.) There, Johnson allegedly blocked Harrison's exit with his body and "aggressively" confronted her about her tardiness at work, which Harrison claims has never been an issue in her career. (*See, e.g., id.* ¶¶ 23–24 (stating that Johnson referenced a time when Harrison arrived late to work, but on that day, she had fallen on ice, suffered a concussion, and filed worker's compensation).) When Harrison accused Johnson of retaliating against her because she

_____

[1] Harrison alleges that she has been employed with the Montgomery County Public School System for 3 years, though she does not state how long she has worked specifically at Blacksburg Middle. (Compl. ¶ 8.)

intended to pursue a formal grievance, he apparently stated that "he could talk to her about anything anytime he wanted to." (*Id.* ¶ 24 (cleaned up).) On January 23, Harrison contacted Human Resources about this back-office encounter. (*Id.* ¶¶ 27, 46.)

On January 25, Harrison received a negative performance evaluation from Johnson (citing the tardiness issues raised for the first time at the January 16 meeting), which she alleges were pretextual and retaliatory. (*Id.* ¶ 28.)

Based on these incidents, Harrison initiated suit against the Board, alleging (1) discrimination and (2) retaliation under Title VII. (*See* Compl. ¶¶ 31–57.) Specific to Count II, Harrison alleges that Johnson's retaliation—via both the January 16 "intimidation incident" and the January 25 negative performance evaluation—caused her employment-related harm. (*Id.* ¶¶ 27–30.) Specifically, she alleges that she feels unsafe when isolated with Johnson and, therefore, needs another administrator to accompany her into one-on-one meetings. (*Id.* ¶ 27.) She also alleges that she "was subjected to escalating discipline, intimidation, and reputational harm because she is a female and because she opposed discriminatory practices." (*Id.* ¶ 30.) Harrison seeks all available relief, including damages "for ordinary emotional distress and other non-economic harm." (*Id.* ¶ 57.) On June 17, 2026, the Board filed a partial motion to dismiss Harrison's retaliation claim.[2] (*See generally* Def.'s Mot. Dismiss.) The matter has been fully briefed, and it is ripe for disposition.

---

[2] The Board also filed an answer denying most of Harrison's allegations of discrimination. (ECF No. 8.)

## II.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). When evaluating the sufficiency of a complaint, the court is obligated to consider the factual allegations asserted in the complaint as well as any exhibits attached thereto. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing Fed. R. Civ. P. 10(c)).

## III.    DISCUSSION

Title VII prohibits employers from retaliating against employees who have "opposed any practice" made unlawful by the statute or "made a charge, testified, assisted, or participated in any manner in [a Title VII] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter[.]"). "[T]he elements of a prima facie retaliation claim under Title VII are: (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal

- 4 -

link between the protected activity and the employment action." *See Coleman v. Md. Ct. Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Here, the Board challenges Harrison only on the second element of her claim, arguing that she failed to allege an adverse employment action. (*See* Def.'s Br. Supp. Mot. Dismiss at 2–3 ("Def.'s Br.") [ECF No. 6].)

An adverse employment action is interpreted broadly and is not confined solely to claims involving "tangible" or "ultimate employment decisions," such as termination or demotion. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 57, 67 (2006). But adverse employment actions must be "materially adverse," in that they cause injury or harm "to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57, 70; *see also Muldrow v. City of St. Louis*, 601 U.S. 346, 357 (2024) (analogizing "materially adverse" to "significant harm"); *Adams v. Anne Arundel Cnty. Pub. Schs.*, 789 F.3d 422, 431 (4th Cir. 2015), *abrogated on other grounds by Hansley v. DeJoy*, No. 23-1426, 2024 WL 4947275, at *2 (4th Cir. Dec. 3, 2024) (unpublished) (defining a materially adverse action as one that causes "some direct or indirect impact on an individual's employment[,] as opposed to the harms immaterially related to it"). Materially adverse employment decisions are distinct from "trivial harms," such as "petty slights, minor annoyances, or simple lack of good manners" "that often take place at work and that all employees experience." *Burlington N.*, 548 U.S. at 68. Relevant here, the Fourth Circuit generally does not regard reprimands and negative performance evaluations, *standing alone*, as adverse employment actions. *See Adams*, 789 F.3d at 481; *Innocenti v. WakeMed*, No. 5:18-CV-90, 2019 WL 3683606, at *4 (E.D.N.C. Aug. 6, 2019); *Matthews v. Board of Educ. of Howard Cnty.*, No. GLR-12-1758, 2012 WL 3506922, at *3 (D. Md. July 10, 2013).

But the inquiry does not end there, because the *Burlington Northern* standard is context specific. 548 U.S. at 69 (opining, for example, that excluding an employee from a lunch "is normally trivial," unless it is a "weekly training lunch that contributes significantly to the employee's professional advancement [that] might well deter a reasonable employee from complaining about discrimination"); *Adams*, 789 F.3d at 431 (finding that, even though reprimands and negative performance reviews do not automatically constitute adverse employment actions, "the analysis of them is necessarily dependent on the circumstances"). Indeed, the key question is whether a "trivial" harm, or series of harms, gives way to "potential collateral consequences that rise to the level of an adverse employment action." *Saville v. Nw. Reg'l Jail Auth.*, No. 5:22-cv-057, 2024 WL 2928754, at *8 (W.D. Va. June 10, 2024) (finding that reprimand and negative performance review did not qualify as adverse employment actions because, even though they led to a temporary suspension, the employee was reinstated one day later, the suspension was removed from her file, and the incidents did not have a "meaningful [e]ffect on her employment"); *Patterson v. Va. Dep't of Corr.*, No. 3:23cv757, 2024 WL 1704669, at *6 (E.D. Va. Apr. 19, 2024) (concluding that "even a verbal warning constitutes an adverse employment action when . . . it 'will exacerbate future discipline in a way that plausibly can be expected to create a future adverse employment effect.'" (quoting *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 821 (E.D. Va. 2016))); *Seaton v. City of N. Charleston*, No. 20-cv-03186, 2013 WL 6859050, at *18 (D.S.C. Dec. 30, 2013) (holding that a warning from an employer may "rise to the level of an adverse employment action 'if it . . . undermines the plaintiff's current position'" (citation omitted)). In other words, courts must ask whether otherwise "petty slights" are, in fact, "signposts on a . . . path to a true adverse

employment action" that violate Title VII. *Burlington N.*, 548 U.S. at 68; *Patterson*, 2024 WL 1704669, at *6.

Harrison has plausibly alleged that she was retaliated against in violation of Title VII. In January 2025, she allegedly experienced two retaliatory acts—the January 16 reprimand and the January 25 negative performance evaluation—in close succession, at the hands of her direct supervisor, following protected activity. (*See* Pl.'s Opp'n at 11 (highlighting a series of retaliatory events: "protected complaints, immediate intimidation, HR intervention, and an unprecedented negative written evaluation").) While any of these incidents, standing alone, may not rise to the level of material adversity, Harrison asserts that, collectively, they had a detrimental impact on her employment at Blacksburg Middle School. *See Adams*, 789 F.3d at 431. At this stage in the litigation, these allegations establish a "plausible basis" for believing that Johnson retaliated against her, in violation of Title VII. *Johnson v. Angels*, 125 F. Supp. 3d 562, 566 (M.D.N.C. 2015) (observing that a plaintiff need not plead a *prima facie* case under Title VII and must only "allege facts to satisfy the elements of a cause of action created by [Title VII]" (quoting *McLeary-Evans v. Md. Dep't of Transp., St. Hwy. Admin.*, 780 F.3d 582, 585 (4th Cir. 2015))); *Brown v. AECOM, Inc.*, No. 7:21-CV-00438, 2022 WL 263551, at *3 (W.D. Va. Jan. 27, 2022).

Insofar as the Board contends that Harrison's harm is speculative (Def.'s Br. at 3), the court disagrees. Harrison does not speak only in generalities; instead, she specifically alleges examples of her reputational and employment-related harm, including: feeling unsafe during one-on-one meetings with Johnson; being subjected to "escalating discipline, intimidation, and reputational harm"; and "economic damages, emotional distress, humiliation, embarrassment,

[and anxiety]" caused by the encounters. (Compl. ¶¶ 26, 30, 55); *see Seaton*, 2013 WL 6859050, at \*18. While the record may not ultimately bear this out—in which case the Board would be entitled to summary judgment on this claim—these allegations are specific enough for Harrison's retaliation claim to proceed to discovery. At bottom, Harrison has alleged that her circumstances are distinguishable from other cases lacking "collateral consequences [rising] to the level of an adverse employment action." *Cf. Saville*, 2024 WL 2925754, at \*8. The court, therefore, is satisfied that Harrison has stated a retaliation claim, and the Board's motion will be denied.

## IV.    CONCLUSION

For the reasons discussed above, the court will deny the Board's partial motion to dismiss.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 2nd day of July, 2026.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE